UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS P. PIPPETT, JR.; JOSEPH T. McDONALD; and JAMES T. ROSATO, IND. & t/a ECM ELECTRICAL CONSTRUCTION,<br><br>    Plaintiffs<br><br>v.<br><br>WATERFORD DEVELOPMENT, LLC;<br><br>    Defendant, | NO. 3:01CV1716(MRK) |

## RULING AND ORDER

This case arises from Defendant Waterford Development, LLC's ("Waterford") termination of employment of three members of the management team for the Adriaen's Landing construction project in Hartford – Plaintiffs Thomas P. Pippett, Jr. ("Pippett, Jr."), Joseph T. McDonald ("McDonald"), and James T. Rosato ("Rosato"). Waterford has moved for summary judgment against each of the Plaintiffs [docs. #36, 39, 42, 57].[1] For the reasons stated below, Waterford's motions for summary judgment are DENIED.

### I.

The factual background of this case was set forth in detail in Judge Janet C. Hall's Ruling

---

[1] Waterford filed a motion for summary judgment against Joseph McDonald [doc. #39], and then filed an amended motion for summary judgment against McDonald [doc. #57]. Accordingly, the Court will consider the amended motion and will deny the original motion as moot.

1

on Defendant's Motion to Dismiss [doc. #30] and will be discussed here only in connection with analysis of specific issues raised by the motions for summary judgment. Moreover, Judge Hall's Ruling on the Motion to Dismiss correctly states the law applicable to each claim.[2] Therefore, familiarity with Judge Hall's decision is assumed.

Judge Hall dismissed Plaintiffs' third cause of action, for fraudulent misrepresentation. Ruling on Mot. to Dismiss [doc. #30], at 12. Remaining in the case are four claims by Plaintiffs: breach of contract, equitable estoppel and promissory estoppel, negligent misrepresentation, and breach of good faith and fair dealing. Waterford seeks summary judgment on each claim.

## II.

Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of demonstrating that there is no genuine material dispute of fact. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000).

## A.

Plaintiffs' first claim is for breach of contract. They allege that Waterford breached its contracts with Plaintiffs by "fail[ing] to comply with the employment terms as agreed upon" and by terminating Plaintiffs' employment. Second Am. Compl. [doc. #12], ¶24, 25. Defendants respond as follows: 1) the contracts are not enforceable under the statute of frauds; 2) the contracts were for at-will employment, and the terminations were thus permissible; and 3) even if

---

[2]The parties have agreed that Connecticut law applies in this case. *See* Ruling on Mot. to Dismiss [doc. #30] at 7.

the contracts were terminable only for cause, the circumstances surrounding termination of Plaintiffs' employment were within the for-cause discretion of Waterford's management. *See* Def's Mem. of Law in Supp. of Mot. for Summ. J. against Pl. Pippett [doc. #43], at 11-17.[3] The Court will address each argument in turn.

**Statute of Frauds**.    Waterford argues that Plaintiffs' testimony that their employment contracts would run for the duration of the project – estimated to be about three and a half or four years – demonstrates that the employment contracts could not be performed within one year. And, insofar as there is no question that these were oral contracts, the Statute of Frauds would bar their enforcement. *Id.* at 11.

Connecticut law provides that "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the part, to be charged: . . . 5) upon any agreement that is not to be performed within one year from the making thereof." Conn. Gen. Stat. §52-550(a). The Connecticut Supreme Court has explained, however, that it "look[s] on th[is] provision with disfavor," and therefore, the Supreme Court has read the statutory language very narrowly, barring only contracts "whose completion within a year would be inconsistent with the *express terms* of the contract." *C. R. Klewin, Inc. v. Flagship Props., Inc.*, 220 Conn. 569, 577, 580 (Conn. 1991) (emphasis added) (Connecticut courts "have sought constructions that limited its application"). The "critical test," according to the Connecticut Supreme Court, "is whether by its

---

[3] Waterford makes substantially similar arguments in support of its motions for summary judgment against each Plaintiff.  *See* Mem. of Law in Supp. of Mot. for Summ. J. against Pl. McDonald [doc. #40], at 12-29; Mem. of Law in Supp. of Mot. for Summ. J. against Pl. Rosato [doc. #37], at 14-23.

terms the agreement is not to be performed within a year. . . ." *Id*. at 580. Therefore, "an oral contract that does not say, in express terms, that performance is to have a specific duration beyond one year is, as a matter of law, the functional equivalent of a contract of indefinite duration for the purposes of the statute of frauds. Like a contract of indefinite duration, such a contract is enforceable because it is outside the proscriptive force of the statute regardless of how long completion of performance will actually take." *Id.* at 583-84.

Here, it is indisputable that the alleged employment contracts did not provide for a specific term of employment, but rather were for the duration of the project. *See, e.g.*, Pippett Sr. Dep. [doc. #50], Pls' Ex. #7 , at 183. As such, the Statute of Frauds does not bar their enforcement. *See C. R. Klewin*, 220 Conn. at 577 ("'A *contingency* is not within [the Statute of Frauds]; nor any case that *depends upon contingency*.") (quoting *Russell v. Slade*, 12 Conn. 455, 460 (1838) (emphasis in original)).

**At-Will Employment.**   Waterford alternatively asserts that Plaintiffs' employment contract were for indefinite duration and that under Connecticut law, employment contracts for an indefinite duration are terminable at the will of either party. *See* Mem. of Law in Supp. of Mot. for Summ. J. against Pl. McDonald [doc. #40], at 15 (citing *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474 (1980)). Waterford acknowledges that the rule that contracts of indefinite duration are terminable at will is only a default rule that applies in the absence of a contrary agreement by the parties. However, Waterford contends that any change in the default at-will rule must be proved through demonstration of a "deliberate substitution of employment policy, based on *specific representations* rather than expressions of intentions with regard to future employment" and that Plaintiffs cannot satisfy that standard. Mem. of Law in Supp. of

Mot. for Summ. J. against Pl. McDonald [doc. #40], at 15. Plaintiffs counter that Waterford did make specific representations sufficient to remove this case from the at-will rule.

  This Court need not – indeed, may not – weigh the evidence at this point. The Connecticut Supreme Court has expressly held that this issue presents a question of fact for the ultimate finder of fact: "Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." *Torosyan v. Boehringer Ingelheim Pharms.*, 234 Conn. 1, 15 (Conn. 1995). Insofar as Plaintiffs have produced evidence supporting their argument that such representations were made, including depositions both of Plaintiffs and Waterford's admitted agent, Thomas Pippett Sr., *see* Pippett Sr. Dep. [doc. #50], Pls' Ex. 7, at 178-83, Pippett Jr. Dep., Pls' Ex. 12, at 87-89, Plaintiffs have made a sufficient showing at this stage of the litigation to permit the jury to weigh Plaintiffs' evidence against the contrary evidence submitted by Waterford, including the unobjected-to minutes of the August 29, 2000 meeting and the draft contracts. *See, e.g.*, Mem. of Law in Supp. of Mot. for Summ. J. against Pl. McDonald [doc. #40], at 17-24.

  Waterford also argues that because the contract with Plaintiff Rosato was through his company, ECM, Rosato has the status of an independent contractor, not an employee, and therefore lacks the common law and statutory protections that Connecticut law provides employees. *See* Mem. of Law in Supp. of Mot. for Summ. J. against Pl. Rosato [doc. #37], at 17-20. However, whatever the legal status of independent contractors, it is Rosato's testimony that he entered into a contract with Waterford (represented by its agent, Thomas Pippett, Sr.) that was to last for the duration of the project and that was terminable only for cause. *See, e.g.,* Rosato

Dep., Ex. 14, at 28-32, 51-53, 110-112. If so – and again, the existence of the contract and its terms are questions of fact for the jury to decide – Rosato's contract could only be terminated for cause, regardless of his legal status as employee or independent contractor.

Waterford also asserts that Plaintiff McDonald's status is different from the other two Plaintiffs since McDonald completed and signed an employment application, after his employment had begun, which recited, "Employment is terminable at the will of the company." Def.'s Ex. B [doc. #41]. McDonald argues that he did not "comprehend at-will employment" at the time he signed the application, that he was told he had to sign the papers in order to paid, and that he did not receive any consideration for the modification of the agreement. Pls' Mem. in Opp'n to Def.'s Mot. for Summ. J. [doc. #46], at 21. McDonald does not expressly make a claim of duress or unconscionability, but rather asserts that the absence of consideration and the circumstances surrounding the application evidence further misrepresentations by Waterford regarding his employment contract.

Waterford does not claim that the employment application constituted either a contract or a modification of the parties' existing oral contract, but rather that it served as a disclaimer of any implied contract of for-cause employment. *See* Mem. of Law in Supp. of Mot. for Summ. J. against Pl. McDonald [doc. #40], at 20-22 (citing *Schermerhorn v. Mobil Chem. Co.*, 2001 WL 50534, at *6 (D. Conn. Jan. 9, 2001). Waterford is correct that express language describing the employment as at-will in the employment application ordinarily would serve as a valid disclaimer against an assertion of implied for-cause employment; however, McDonald does not claim an *implied* for-cause employment but rather that he and Waterford (through the representations of Waterford's agent Thomas Pippett, Sr.) entered into an oral contract that

6

expressly required cause for termination. *See* Pippett Sr. Dep. [doc. #50], Pls' Ex. 7, at 178-83. While Pippett Sr. gave a variety of different answers as to the explicitness of his representations regarding for cause employment, taking all inferences in Plaintiffs' favor (as the Court is required to do at the summary judgment stage), there is sufficient evidence in the record at this point to create a genuine issue of material fact; summary judgment, therefore, is not warranted. *See Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir. 1995) ("In determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."). The language in the employment application will constitute only another piece of evidence for the jury to consider in determining the nature of the contract between the parties, their intent, and whether any contract that they may have made was later modified in any way.

    **Proper For-Cause Termination**.  Waterford next argues that even if Plaintiffs did have employment contracts requiring cause for termination, Plaintiffs were terminated for lack of work and that determination was well within the discretion of Waterford's management and constituted cause as a matter of law. *See* Len Wolman Dep. [doc. #44], Ex. C., at 69.

    It is undoubtedly true that a "reduction in force, based on economic circumstances, can be a proper reason for terminating an employee and this issue can, at times, be decided on a motion for summary judgment." *Rivers v. Milford Mental Health Clinic,* 2002 WL 1332255, at *4 (Conn. Super. Ct. May 20, 2002). Even Plaintiffs concede that lack of work can constitute good cause for termination of employment. *See* Pls' Mem. in Opp'n to Def.'s Mot. for Summ. J. [doc. #46], at 24. However, they contest Waterford's assertion that lack of work was the true reason for

the terminations in this case, and they have presented sufficient evidence at this stage of the proceeding to create a genuine issue of material fact as to the actual reason for their terminations and in particular whether lack of work was the real reason. *Id.* at 26-28; *see Coelho v. Posi-Seal Int'l, Inc.*, 208 Conn. 106, 122 (Conn. 1988) ("We conclude that the question of whether an employer has terminated an employee because of a legitimate reduction in force or for other reasons is an issue to be determined by the trier of fact.").

Waterford leans heavily on *Rivers* for the proposition that good cause can be decided on a motion for summary judgment. But in that case there were no disputed questions of fact, making the case appropriate for summary judgment and also readily distinguishable from the present case. *See Rivers*, 2002 WL 1332255, at *5. Therefore, as with the other issues raised by Waterford's defenses to Plaintiffs' contract claims, Waterford's good cause defense is a question that cannot be decided on summary judgment.

**B.**

Asserting that they were "induced to believe that their employment was not at-will," Plaintiffs' second count seeks recovery under theories of equitable estoppel and promissory estoppel. Second Am. Compl. [doc. #12], ¶28-33. In Connecticut (which follows the general law of estoppel), to make out a claim for estoppel, a plaintiff must demonstrate that the defendant did an act or made a statement intended to make the plaintiff believe something and act on that belief and that the plaintiff did in fact act on that belief to his or her detriment. *See, e.g., LaSalle Nat'l Bank v. Freshfield Meadows, LLC*, 69 Conn. App. 824, 838 (Conn. App. Ct. 2002). Plaintiffs allege each of these elements in their complaint and in their testimony and summary judgment

papers have submitted evidence, which if believed, would establish that Waterford "made promises which they did and should have realized would induce action on the part of Plaintiffs," that "Plaintiffs relied upon these promises by moving and/or relocating to Connecticut to take employment with Waterford," and that Plaintiffs suffered damages as a result. Second Am. Compl. ¶¶29, 30, 32; Pls' Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. [doc. #46], at 34.

Waterford argues that it did not make any misleading statements or engage in any misleading conduct, and that Plaintiffs were not prejudiced by relocating from Pennsylvania to Hartford to work on the Adriaen's Landing project. *See, e.g.,* Mem. of Law in Supp. of Mot. for Summ. J. against Pl. Rosato [doc. #37], at 25-27. Waterford also claims that Plaintiffs failed to exercise due diligence in relying entirely on Thomas Pippett Sr.'s representations regarding their employment. *See Connecticut Nat'l Bank v. Voog*, 233 Conn. 352, 367 (Conn. 1995) ("It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge.") (internal quotes omitted).

Once again, however, the nature of the discussions between the parties and the promises, if any, made by Waterford are questions of fact for the jury, as is the issue of prejudice or detriment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). As to the issue of due diligence, Plaintiffs respond that given the urgency of the circumstances surrounding their hiring, their reliance on Pippett Sr.'s representations was reasonable. Pls' Mem. in Opp'n to Def.'s Mot. for Summ. J. [doc. #46], at 35. The question of the reasonableness of Plaintiffs' reliance is also a question for

9

the jury. As a consequence, Defendants are not entitled to summary judgment on Plaintiffs' second count.

## C.

Plaintiffs allege that by actively pursuing, inducing, committing to, and telling them about economic rewards, living allowances, the duration of the project, bonuses, and other benefits with regard to their employment, Waterford, through its agent Thomas Pippett Sr., negligently misrepresented the nature of their positions. *See* Second Am. Compl. ¶45. In its motion for summary judgment, Waterford argues that Plaintiffs can point to no specific false representations made by or on behalf of Waterford. *See, e.g.*, Mem. of Law in Supp. of Mot. for Summ. J. against Pl. Rosato [doc. #37], at 28-30.

Plaintiffs respond that if the contracts were in fact for at-will employment, Pippett, Sr.'s representations (which at various points and to varying degrees during his deposition, he acknowledges making) that Plaintiffs' employment agreements were terminable only for cause were false, and that is sufficient to allow a jury to award them judgment for negligent misrepresentation. *See D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 218 (Conn. 1987) ("For purposes of a cause of action for negligent misrepresentation, however, the plaintiff need not prove that the representations made by the defendants were promissory. It is sufficient to allege that the representations contained false information.").

Like the other issues in this case, the question whether Thomas Pippett, Sr.'s representations to Plaintiffs were in fact false is a question of fact that only a jury can resolve. *See Chen v. Pitney Bowes Corp.*, 195 F. Supp. 2d 368, 377-78 (D. Conn. 2002). Waterford is

therefore not entitled to summary judgment on the fourth count of Plaintiffs' complaint.[4]

### D.

Finally, Plaintiffs allege that Waterford breached its duty of good faith and fair dealing by engaging in conduct that injured Plaintiffs' rights to receive the benefits of the contracts they had made and by acting in bad faith in so doing. Second Am. Compl. ¶¶51, 52. The parties agree that this cause of action is governed by the same standard that governs Plaintiffs' claim for breach of their alleged for-cause employment contracts – namely, the arbitrary, capricious, or bad faith standard. *See* Mem. of Law in Supp. of Mot. for Summ. J. against Pl. Rosato [doc. #37], at 31-32 (citing *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 598 (Conn. 1996)). For the reasons previously recited in connection with Plaintiffs' breach of contract claims, the Court concludes that this count also presents genuine issues of material fact that preclude the granting of summary judgment.

### III.

Defendant's Motions for Summary Judgment [docs. #36, 39, 42, 57] are DENIED. The parties will participate in a telephonic conference with the Court on March 10, 2004 at 4:00 p.m. to set a schedule for submission of trial memoranda, a final pretrial conference, and trial.

---

[4] As noted *supra*, Plaintiffs' third count was dismissed by Judge Hall.

IT IS SO ORDERED.

/s/     <u>       Mark R. Kravitz      </u>
                    U.S.D.J.

Dated at New Haven, Connecticut: <u>February 27, 2004</u>