**Plaintiffs' Proposed Jury Instruction No. 1**

**Agency**

The plaintiffs contend that Pippett, Sr. was acting as an authorized representative of defendant Waterford when he made certain representations and/or offered them employment contracts for the duration of the Adriaen's Landing project. Defendant denies that Pippett, Sr. was authorized to make any binding representations on defendant's behalf.

The mere existence of an employment relationship without more does not render statements of an employee admissible against an employer. It must be established that the agent was authorized by the principal to make an admission. However, a principal may also be held liable for the statements of an agent, even if the agent was not authorized to make certain statements, if the acts of the principal clothed the agent with apparent authority to make such statements on the principal's behalf. The acts of the principal must be such that:

1. The principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority; and

2. As a proximate result, the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority. Lettieri v. American Savings Bank, 182 Conn. 1, 8 437 A.2d 822 (1980); Munson v. United Technologies Corp., 28 Conn. App. 184, 188-89, 609 A.2d 1066 (1992);  Edart Truck Rental Corp. v. B. Swirsky & Co., 23 Conn. App. 137, 139, 579 A.2d 133 (1990).

Here, it is undisputed that Waterford hired Pippett, Sr. to recruit potential project team members to come to work on the Adriaen's Landing project team. Plaintiffs and Pippett, Sr. claim that Waterford authorized Pippett, Sr. to make binding representations promising employment for each of the plaintiffs for the duration of the Adriaen's Landing project, and

extending offers of employment for the duration of the project. Defendant denies that Pippett, Sr. had any such actual authority. If you find that Pippett, Sr. had actual authority to make, and did in fact make, binding representations and promises of employment for the duration of the project to each of the plaintiffs, you must find that Pippett, Sr. made such representations and promises on behalf of the defendant and Waterford will be held bound by those representations and promises.

Even if you do not find that Pippett, Sr. has actual authority from Waterford to make certain representations and promises of employment for the duration of the project of defendant's behalf, if you find that Waterford held Pippett, Sr. out as possessing sufficient authority to embrace the representations and promises that he made to plaintiffs of employment for the duration of the project, or knowingly permitted him to act as having such authority; and that, as a proximate result, the plaintiffs acted in good faith and reasonably believed, under all the circumstances, that Pippett, Sr. had the necessary authority, then you must find that Pippett, Sr. was clothed by Waterford to make representations and promises on behalf of the defendant through his apparent authority.

Lettieri v. American Savings Bank, 182 Conn. 1, 8 437 A.2d 822 (1980); Munson v. United Technologies Corp., 28 Conn. App. 184, 188-89, 609 A.2d 1066 (1992); Edart Truck Rental Corp. v. B. Swirsky & Co., 23 Conn. App. 137, 139, 579 A.2d 133 (1990).

## Plaintiffs' Proposed Jury Instruction No. 2

### Breach of Contract

When determining the promises included in a contract, your basic task is to determine and give effect to the intention of the parties. The purpose of the agreement, the circumstances under which the agreement was made, as well as the conduct and the words used by the parties before and after the contract was entered into, must be taken into account in interpreting the contract. In determining what the terms of the agreement were, you must look at all the circumstances surrounding the agreement. In making the determination, words and actions, are deemed to mean what a person of ordinary understanding would reasonably expect them to mean. *Multby v. Associated Realty Co.*, 114 Conn. 283, 289 (1932); Connecticut Jury Instructions, 3rd ed.., Vol. I, §21; citing Wright & Fitzergerald. When there is not contract language, as in this case, the determination of what the parties intended to encompass in their contractual commitment is a question of the intention of the parties and an inference of fact.

All employer/employee relationships, not governed by express contracts, involve some type of implied contract of employment. There cannot be any serious dispute that there is a bargain of some kind between the employee and the employer; otherwise the employee would not be working. It is your job to determine what were the terms of the employment contracts between Waterford and each of the individual plaintiffs.

Although the general rule is that employment is at will, the parties can agree that the employee will not be terminated unless there is just cause. At-will means that the employer can terminate the employee at any time and that the employee can quit at any time, for any reason or no reason at all. However, if the parties agree that the employee will not be fired as long as he performs

−3−

his job for the duration of a project, then the employment is not at-will.

When an employer promises an employee that if he performs his job he will have a job, you can find that the employer must have just cause to terminate the employee. That is, the company must prove that the employee was not performing his job.

The plaintiffs each claim that he or she was promised that so long as he or she performed his or her job, he would have a job. Each plaintiff claims to have been hired for the duration of the Adriaen's Landing project.

Each plaintiff has the burden of proving that Waterford agreed through either its actions or words or conduct to undertake some form of commitment to each plaintiff under which he or she would not be terminated arbitrarily or without just cause. In order for each plaintiff to prevail under the theory of breach of contract, you must find that the plaintiff has proven that Waterford impliedly promised that he or she would not be fired without just cause.

In order to find that the implied contract of employment included a promise by the defendant that, if plaintiff worked for the company, his or her employment could not be terminated without just cause, you do not need to find that Waterford or its agents used the term "just cause" in making a promise. You may find that Waterford, through its words, actions and/or conduct, implied that plaintiff would not be terminated unless the employer had just cause to terminate his or her employment.

If you find that the parties had an agreement that the individual plaintiffs could not be terminated except for just cause, then the defendant has the burden to prove, by a preponderance of the evidence, that it had just cause to terminate each of the plaintiffs. You must decide whether Waterford has proven that it had just cause to terminate each plaintiff.

–4–

It is undisputed that the plaintiffs and the defendant entered into employment contracts. It is also undisputed that Waterford terminated Pippett, Jr., Rosato and McDonald without prior notice on October 3, 2000, and terminated Jennings without prior notice on November 3, 2000. You have heard testimony from the plaintiffs and from Pippett, Sr., that each of the plaintiffs were promised that they were hired for the term of the project. Defendant denies this and also asserts that there was a lack of work for plaintiffs on the project that constituted just cause to terminate their employment. Defendant has not offered any evidence of any other just cause, other than lack of work, to justify termination of an employment contract for the duration of the Adriaen's Landing project.

It is the duty of the plaintiffs to prove to you in the first instance, by a fair preponderance of the evidence, that their implied contracts of employment were to continue until the employer had just cause to terminate their employment. If you find that one or more of the plaintiffs was employed on an at-will basis, then you must find for the defendant on the breach of contract claim associated with that plaintiff. However, if you find that the implied contracts of employment of one or more of the plaintiffs required just cause for firing, then the burden shifts to the defendant to prove, by preponderance of the evidence, that the company had just cause to fire each of the plaintiffs.

Defendant has claimed that each of the plaintiffs was terminated for "lack of work," and has offered no evidence of any other just cause to terminate the plaintiffs. You are not permitted to speculate regarding any other possible just cause, if you do not find that a legitimate lack of work was the reason for plaintiffs' termination. If you find, however, that a one or more of the plaintiffs has proven, by a preponderance of the evidence, that he or she had an employment contract for the duration for the project and that legitimate lack of work was not the real reason why defendant terminated that plaintiff, then you must find that plaintiff has proven his or her claim for breach of

–5–

contract.  If you find that the employer needed just cause to terminate Pippett, Jr., Rosato, McDonald and Jennings, and that there was not just cause to terminate Pippett, Jr., Rosato and McDonald on October 3, 2000, or to terminate Jennings on November 3, 2000, then you should find for the plaintiffs for breach of contract.

Torosyan v. Boehringer-Ingelheim Pharmaceutical, Inc., 234 Conn. 1, 14-15 (1995); Brian Gaudio v. Griffin Health Services Corp. 249 Conn. 523 (1999).

## Plaintiffs' Proposed Jury Instruction No. 3

### Promissory Estoppel

Each of the plaintiffs claims that he or she relied to his or her detriment upon the defendant's promises of job security communicated through Waterford's agent, Pippett, Sr.  Such a claim is referred to as promissory estoppel.

A fundamental element of promissory estoppel is the existence of a clear and definite promise which the defendant could have reasonably expected to induce reliance on the part of each of the individual plaintiffs.  D'Ulisse-Cupo v. Bd. of Directors of Notre Dame H.S., 202 Conn. 206, 213 (1987).  Thus, the plaintiffs must each prove to you, by a preponderance of the evidence, that the defendant made a promise which they could reasonably have expected to provoke reliance by the plaintiffs and that each plaintiff did, in fact, detrimentally rely on that promise.

Plaintiff each claim to have relied on Pippett, Sr.'s promises of job security for the duration of the Adriaen's Landing project in accepting the job.  You must decide whether Waterford authorized Pippett, Sr. to make these promises which Waterford could reasonably have expected plaintiffs to rely on and whether plaintiffs did, in fact, rely on Pippett, Sr.'s promises of employment for the duration of the project.


Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 575 (1995); D'Ulisse-Cupo v. Bd. of Directors of Notre Dame H.S., 202 Conn. 206, 217-218 (1987).

### Plaintiffs' Proposed Jury Instruction No. 4

### Negligent Misrepresentation

Each of the plaintiffs also allege negligent misrepresentation based on factual representations plaintiffs claim Waterford made, through their representative, Pippett, Sr. that each would be hired for the duration of the Adriaen's Landing project, preliminarily estimated at 3 ½ to 4 years. To prove a negligent misrepresentation claim, each plaintiff must prove, by a preponderance of the evidence, the following:

1. A misrepresentation by or on behalf of the defendant to the plaintiff.

2. That the defendant failed to exercise reasonable care or competence in communicating the information.

3. That the plaintiff justifiably relied on the defendant's misrepresentation(s).

4. That plaintiff suffered a loss.

Even innocent misrepresentations of fact are actionable if the defendant had the means of knowing, ought to have known, or had the duty to know the truth or accuracy of the representations at the time they were made. It would be sufficient for each plaintiff to show that the representations made by defendant contained false information upon which each plaintiff justifiably relied.

Plaintiff each claim that Pippett, Sr. communicated an offer of employment on behalf of defendant Waterford for the duration of the Adriaen's Landing project, preliminarily estimated at 3 ½ to 4 years. One or more of the plaintiffs had worked with Pippett, Sr. in the past on one or more other projects with a similar arrangement that was not terminable at-will. You must decide whether Waterford had the means of knowing, ought to have known, or had the duty to know the truth or accuracy of the representations being made on its behalf by Pippett, Sr. at the time they were made.

–8–

You must decide whether the statements were made and, if so, whether the statements were false. You must then decide whether each of the plaintiffs relied on the false representations in foregonig other employment opportunities is accepting the job offered by Pippett, Sr. on behalf of Waterford on the Adriaen's Landing project.

D'Ulisse-Cupo v. Bd. of Directors of Notre Dame H.S., 202 Conn. 206 (1987).

## Plaintiffs' Proposed Jury Instruction No. 5

## Implied Covenant of Good Faith and Fair Dealing

Each plaintiff also asserts that the defendant breached the implied covenant of good faith and fair dealing by terminating her or his employment without cause. I charge you that in every contract the law implies a promise by each party to deal fairly and in good faith with the other party. Carbone v. Atlantic Richfield Co., 204 Conn. 460, 470 (1987); Magnan v. Anaconda Indus. Inc., 193 Conn. 558, 572 (1974).

To prove her or his claim, each plaintiff must show, by a preponderance of the evidence, that Waterford failed to fulfill the reasonable and justified expectations of the plaintiffs. In deciding this issue, you are not to decide whether or not in your personal opinion you would have terminated each of the plaintiffs for the reasons given by the defendant. Rather, you must determine whether the defendant's termination of the plaintiffs lived up to the reasonable expectations of the parties. This is called the implied covenant of good faith and fair dealing.

Good faith and fair dealing simply requires that each party act consistently with the reasonable expectations of the other party, regardless of whether there is a formal written requirement to do so. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. A breach of good faith is an overreaching or use of the employer's superior bargaining power which deprived the plaintiff of clearly identifiable compensation. The implied covenant of good faith and fair dealing is a supplement to aid in the interpretation of specific contract terms, but cannot be used to vary or change the terms of the agreement. A failure by the defendant to act as required by the implied covenant of good faith and fair dealing is as much a violation of the contract as the failure to

perform any specific contract term.

Each plaintiff claims that he was promised that if he or she performed his duties he would have a job for the duration of the Adriaen's Landing project, and would not be arbitrarily fired. The plaintiffs claim that their expectations were based on the specific promises and assurances made to each by Waterford's representative, Pippett, Sr. in the recruitment and hiring process.    These promises included that employment was for the duration of the Adriaen's Landing project, preliminarily estimated at 3 ½ to 4 years and that plaintiffs would be retained so long as they performed their jobs satisfactorily.

You must decide whether plaintiffs' beliefs were reasonable and justified. If so, you must then decide whether Pippett, Jr.'s, Rosato's, McDonald's and/or Jennings' reasonable and justified expectations was violated by Waterford when defendant terminated Pippett, Jr., Rosato and/or McDonald on October 3, 2000, or when defendant terminated Jennings on November 3, 2000.


Torosyan v. Boehringer-Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 14-15 (1995); Bason v. American Univ., 414 A.2d 522, 525 (D.Conn. 1980); Magnan v. Anaconda Indus., Inc., 193 Conn. 558, 567 (1984); Gruenberg v. Aetna Ins. Co., 9 Cal. 3rd 566, 108 Cal. Rptr. 480, 510 P.2d 1032, ALR4th 2048.

## Plaintiffs' Proposed Jury Instruction No. 6

### Damages

I will now instruct you as to the measure of damages. These instructions are not to be considered as indicating any view as to which party is entitled to a verdict in this case. These instructions are given for your guidance in the event you find in favor of any of the plaintiffs on the issues of liability. If you find that any plaintiff has met his or her burden of proving any one or more of his or her claims, you may then award damages to that plaintiff. The amount of damages you award to any plaintiff must be reasonable, fair and completely adequate to make the plaintiff whole for injuries he or she suffered as a result of any actions or omissions of the defendant.

If you find that one or more of the plaintiffs has proven his or her case against the defendant, then that plaintiff or plaintiffs is entitled to an award of damages against the defendant. If you find in favor of any plaintiff, that plaintiff is entitled to an award of damages in an amount which you will determine to compensate him or her fully, fairly, and justly, for the injuries and losses sustained. The fundamental rule regarding damages is that the amount awarded should be fair, just, and reasonable compensation for the losses suffered as a direct and proximate consequence of the defendant's conduct. A plaintiff is entitled to recovery for any such damages established by a preponderance of the evidence. Wright, Connecticut Jury Instructions, 2d ed. §226.

A general principle of law is that whenever one person has committed a wrong against another, that other shall be awarded damages to the extent that he will be as well off as though the wrong had not been committed. Leventhal v. Stratford, 121 Conn. 290, 299 (1936).

If you conclude that the defendant caused the plaintiffs' injuries or losses, it will then be necessary for you to award that plaintiff what that plaintiff would have been entitled to but for the

conduct of the defendant.

Leventhal v. Stratford, 121 Conn. 290, 299 (1936).; Wright, Connecticut Jury Instructions, 2d ed. §226.

**Plaintiffs' Proposed Jury Instruction No. 7**

**Damages: Breach of Contract, Breach of Implied Covenant of Good Faith
and Fair Dealing, Promissory Estoppel and Negligent Misrepresentation**

The general rule in breach of contract, breach of the implied covenant of good faith and fair

dealing, promissory estoppel and negligent misrepresentation cases is that the award of damages

should place the injured party, so far as can be done with money, in the same position as he would

have been in had the contract been performed.  In each of the claims, when an employee such as

Pippett, Jr., Rosato, McDonald or Jennings is prevented from fully performing because the employer

terminates his employment, the employee can recover the wages and benefits he or she would have

earned under the contract, minus any wages and benefits which he has earned or could have earned

elsewhere.  (As an aside, you should remember that it is Waterford's burden to prove what each of

the plaintiffs has or should have been able to earn elsewhere.  I will instruct you on that burden

further in a moment.)  The lost wages and benefits that each of the individual plaintiffs can recover

are both the wages and benefits each has lost to date, as well as any that he or she has proven he or

she will lose over a reasonable period extending into the future.  Benefits include health insurance,

retirement plans, and the like.

In awarding future lost wages and benefits, you must award an amount of money that

represents the wages and benefits the plaintiff would have earned over a reasonable future period.

Plaintiffs have each testified regarding the salaries and benefits each was promised in connection

with their employment for the duration of the Adriaen's Landing project, preliminarily estimated at 3

½ to 4 years, but still not yet completed at the present time, more than 4 years from when each

plaintiff began work on the project.  It is for you to decide whether to award the amount of damages

–14–

supported by plaintiffs' testimony or some other amount of money that you find there is evidence to support as the value of each plaintiffs' past and future wage loss. Remember, if you find that Waterford breached the employment contract for one or more of the plaintiffs, you should strive to put any such plaintiff in the same monetary position he or she would have been in if the contract had not been breached.

Torosyan v. Boehringer-Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 32-34 (1995); Burns v. Gould, 172 Conn. 210, 221 (1977); Carter v. Bartek, 142 Conn. 448, 451-52 (1955); see Worell v. Multipress, Inc., 45 Ohio St.3d 241, 543 N.E.2d 1277, 1282-83 (1989); see also Rosetti v. City of New Britain, 163 Conn. 283, 292 (1972); Pollak v. Danbury Mfg. Co., 103 Conn. 553, 559 (1925); Ford v. Blue Cross/Blue Shield of Connecticut, 216 Conn. 40 (1990).

**Plaintiffs' Proposed Jury Instruction No. 8**

**Mitigation**

One of the defendant's contentions is that one or more of the plaintiffs failed to mitigate his

or her damages by seeking other work after he or she was terminated by Waterford. As I mentioned

a moment ago, the defendant bears the burden of proving by a preponderance of the evidence that

this is true. Defendant must demonstrate that there were substantially equivalent jobs available to

each plaintiff after he or she was terminated, and he or she unreasonably failed to seek out those jobs.

In addition, the defendant bears the burden of proving how much money each of the plaintiffs would

have earned if he or she had accepted other equivalent employment reasonably available to him or

her. The plaintiffs were not required to go into a different line of work or accept a demeaning job for

another employer. The plaintiffs also need not have looked for jobs that required excessive

commuting and they were not required to relocate or move in order to find another comparable job.

A similar job or comparable job means a position with compensation, job responsibilities, working

conditions, status and promotional opportunities which are substantially equivalent to the jobs which

plaintiffs held at Waterford.


Ford Motor Co. V. EEOC, 458 U.S. 219, 231-32 (1982); Torosyan v. Boehringer-Ingelheim

Pharmaceuticals, 234 Conn. 1, 32-33 (1995); Kilduff v. Adams, 219 Conn. 314, 323-24 (1991);

Miller v. Appleby, 183 Conn. 51, 58 (1981).

**Plaintiffs' Proposed Jury Instruction No. 9**

**Interest**

Once you have calculated the amount of salary and benefits you find that the defendant owes to one or more of the plaintiffs, you must also award interest on the damages each plaintiff suffered up until the time of judgment. The interest is to be calculated at 10% per year and should be calculated from the date you find the money owed was payable.

C.G.S. § 37-3a; Alderman v. RPM of New Haven, Inc., 20 Conn. App. 566, 568 (1990); Employee Rights Litigation: Pleading and Practice, Vol. 2, Section 7.54[3][6].

## Plaintiffs' Proposed Jury Instruction No. 10

### Compensatory Damages

You may also award compensatory damages to any plaintiff for the any emotional harm sustained by such plaintiff if you find that the plaintiff proved his or her claim of negligent misrepresentation.

The rule is, that insofar as money can do it, a plaintiff is entitled to get fair and just compensation for the injuries he or she has suffered. If you find that one or more of the plaintiffs has suffered humiliation, loss of self esteem, depression, loss of enjoyment of life, mental or emotional distress, or other damages caused by the defendant's acts, then you may award such damages which flow naturally from the defendant's actions. Each plaintiff must prove that he or she has suffered emotional distress that was a natural and proximate result of the defendant's negligent misrepresentations. Generally, the mere termination of employment, without proof that defendant's negligent misrepresentations were a substantial factor in causing plaintiff's emotional distress, is not, by itself, enough for you to award damages to a plaintiff for his or her emotional distress. But, where, as here, plaintiffs claim to have relied on certain representations made by defendant, by or through their agent, Pippett, Sr., each plaintiff is entitled to recover for his or her emotional injuries if you find those injuries are the natural and proximate result of the negligent misrepresentations.

Each plaintiff may recover damages for emotional damages even when such emotional pain and suffering is shown to exist by the plaintiff's testimony alone. You may also rely on any testimony of plaintiff's friends and family who testified to their observations of plaintiff. There is no reason to subject the claim of mental suffering, which is ordinarily shown to exist by subjective complaints, to stricter or greater care than a claim of physical suffering. A plaintiff need only

–18–

establish a claim for mental or emotional distress by a fair preponderance of the evidence, unfettered by any additionally exacting gauge. Recovery for emotional distress does not require expert testimony on the subject, nor does it depend upon or require proof of medical expenses associated therewith. Thus, in addition to other damages incurred by any of the plaintiffs, if you find that one or more of the plaintiffs has proven his or her claim of negligent misrepresentation, then you may award damages based upon the emotional distress you find plaintiff to have suffered as indicated by the evidence in the case.

It is for you, in the exercise of your best judgment, to say what is fair and just compensation. The court cannot provide you with any specific rules or formulas. It is entirely up to you. That is a matter of law that is left to the conscience and sound judgment of the jury. You should not act unreasonably through bias, passion or sympathy, but you should exercise common sense and fix an amount of damages that, in accordance with the evidence and the law, will fairly, justly and completely adequately compensate the plaintiffs for all the injuries they have suffered.


Berry v. Loiseau, 223 Conn. 786, 811 (1992); Oakes v. New England Dairies, Inc., 219 Conn. 1 (1991); Buckely v. Lavollo, 2 Conn. App. 579, 589 (1984); Leabo v. Leninski, 2 Conn. App. 715, 727 (1984); Delott v. Roraback, 179 Conn. 406, 409 (1980); Orlo v. Connecticut Co., 128 Conn. 231, 239-40 (1941); Bushnell v. Bushnell, 103 Conn. 583, 594 (1925); Aspiazu v. Orgera, 205 Conn. 623, 631 (1991); Manning v. Michael, 188 Conn.607, 616 (1982); Parsons v. United Technologies Corp., 243 Conn. 66, 88 (1997); Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345 (1978); D'Ulisse-Cupo v. Bd. of Directors of Notre Dame H.S., 202 Conn. 206 (1987); Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 478 (1980); Buckman v. People Express, Inc.,

205 Conn. 166, 173 (1987); Employee Rights Litigation: Pleading & Practice, Vol. 2, § 7.54[5][e].

## Plaintiffs' Proposed Jury Instruction No. 11

### Damages: Negligent Misrepresentation

In awarding damages for negligent misrepresentation, if you find for one or more of the plaintiffs on that count, you may award damages in an amount that will reasonably compensate him or her for any loss or harm, provided that you find it was suffered by him and proximately caused by the defendant's actions. As stated earlier, that will include the wages and benefits Pippett, Jr., Rosato, McDonald and/or Jennings would have earned if they had not justifiably relied on false misrepresentations, minus any wages, if any, which plaintiffs have earned to date and which they reasonably can be expected to earn in the future from other employment. If you find that one or more of the plaintiffs has proven a claim of negligent misrepresentation by a preponderance of the evidence, you should provide him or her with an amount of money that will compensate him or her for all of the damages which are the natural and proximate consequence of the negligent misrepresentation

In addition, if you find that any of the plaintiffs have proven that the defendant is liable for negligent misrepresentation, then you must determine the amount of non-economic damages, if any, the plaintiffs have proven by a preponderance of the evidence. I will instruct you on that in a minute.

Plaintiffs each claim to have suffered loss of income and benefits, loss of the privileges of employment, loss of self-esteem, humiliation, depression and anxiety as a result of their reliance on Waterford's false representations communicated by Pippett, Sr. Plaintiffs claim to have relied on representations from Pippett, Sr. that as long as they did their jobs, they would have a job on the Adriaen's Landing project, which was preliminarily estimated to last for 3 ½ to 4 years, but which is not yet completed over 4 years after plaintiffs started work on the project.

Plaintiffs are each entitled to be compensated for the damages, both for their economic losses as well as emotional injuries, that were the natural and proximate result of any negligent misrepresentations you find.


Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345 (1978); D'Ulisse-Cupo v. Bd. of Directors of Notre Dame H.S., 202 Conn. 206 (1987); Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 478 (1980); Buckman v. People Express, Inc., 205 Conn. 166, 173 (1987); Employee Rights Litigation: Pleading & Practice, Vol. 2, § 7.54[5][e].

**Plaintiffs' Proposed Jury Instruction No. 12**

**Punitive Damages**

Punitive damages may be awarded if you find that one or more plaintiffs has proven his or her claim of negligent misrepresentation and/or breach of the implied covenant of good faith and fair dealing, and that the defendant engaged in malicious and outrageous conduct, that is, willful, wanton or reckless actions done with a bad motive or reckless indifference to the interests of others. These are damages that, as the word "punitive" implies, may be assessed against the defendant in order to punish the defendant for its conduct and to deter the occurrence of similar conduct in the future.

In determining whether the conduct was wanton or willful, you must consider what occurred in light of all the facts involved. By wanton or willful, I mean that you must decide whether the defendant's actions in terminating the plaintiffs were motivated by ill will towards one or more of the plaintiffs, or for the purpose on the part of the defendant to do harm to plaintiffs or if you find that the defendant intended to bring about the results which occurred. In determining whether the defendant's conduct was reckless you should assess whether the defendant acted in a reckless disregard of the law or of the consequences that might follow from its conduct, such as any of plaintiffs' resulting economic losses and/or emotional distress.

If you find that one or more of the plaintiffs has proven his or her claim of negligent misrepresentation, and that defendant's actions were willful, wanton or reckless, then you may award punitive damages to punish the defendant and to deter similar conduct in the future.

If you find that one or more plaintiffs has proven his or her claim of breach of the implied covenant of good faith and fair dealing, and that defendant's actions were willful, wanton or reckless, you must determine whether defendant's actions were violative of an important public

–23–

policy. If you find that defendant's actions in terminating one or more of the plaintiffs involved an undermining of the public trust and/or a misuse of public funds, you may decide that an important public policy was violated. If you find that one or more plaintiffs has proven his or her claim of breach of the implied covenant of good faith and fair dealing, that defendant's actions were willful, wanton or reckless, and that defendant's actions were violative of an important public policy, then you may award punitive damages to punish the defendant to deter similar conduct in the future.

You are not to set any amount for these damages. That is because, in Connecticut, punitive damages are limited to plaintiffs' attorneys' fees and other litigation expenses. The parties have agreed the Court will determine the appropriate amount of those fees and expenses if you award punitive damages.

Kenny v. Civil Service Commission, 197 Conn. 270, 277, 496 A.2d 956 (1985); Chykirda v. Yanush, 131 Conn. 565, 568, 41 A.2d 449 (194); Lentine v. McAvoy, 105 Conn. 528, 531 (1927; Hanna v. Sweeney, 78 Conn. 492, 493, 62 A. 785 (1906); Barry v. Posi-Seal Int'l, Inc., 40 Conn. App. 577, 584-89, 672 A.2d 514 (1996).