## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **THOMAS P. PIPPETT, JR.,** | : | **CIVIL CASE NO.** |
| **JOSEPH T. MCDONALD, and** | : | **3:01cv1716(MRK)** |
| **JAMES J. ROSATO, IND.** | : | |
| **t/a ECM ELECTRICAL** | : | |
| **CONSTRUCTION,** | : | |
|     **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **WATERFORD DEVELOPMENT, LLC,** | : | |
|     **Defendant and Third-Party Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **THOMAS PIPPETT, SR.,** | : | |
|     **Third-Party Defendant.** | : | |

| | | |
|---|---|---|
| **DARLENE JENNINGS,** | : | **CIVIL CASE NO.** |
|     **Plaintiff,** | : | **3:02cv1937(MRK)** |
| | : | |
| **vs.** | : | |
| | : | |
| **WATERFORD DEVELOPMENT, LLC,** | : | |
|     **Defendant.** | : | |

## PLAINTIFFS' BRIEF IN SUPPORT
## OF PUNITIVE DAMAGES

The above matters consolidated by agreement for trial were tried to verdict before a jury, resulting in both compensatory and punitive damages in favor of all four plaintiffs. Per the Charge of the Court, the jury's award flowed from their apparent finding that Defendant's negligent misrepresentations were outrageous and/or recklessly indifferent. Their verdict on punitive damages was limited to simply a "YES" with the Court's future assessment of the amount. This Brief is in response to the Court's invitation to counsel to provide an evidentiary basis and supporting legal authority for the amounts claimed.

## I.    Evidentiary Basis for Punitive Damages

### A.  Record Evidence

First of all, two procedural points are critical:

(1) At the close of Plaintiffs' case, Defendant failed to file any Motion for Judgment as a Matter of Law, pursuant to Rule 50, Fed.R.Civ.P., on any of Plaintiffs' causes of action raised in the consolidated cases;

(2) The two extensive charge conferences with counsel resulted in a Charge to which neither side objected.

Accordingly, Defendant conceded that a legally sufficient case was presented through the evidence to support each of Plaintiffs' claims, including negligent misrepresentation. Furthermore, Defendant's agreement to the Charge indicated its awareness that sufficient evidence had been presented to warrant submitting the matter of punitive damages to the jury. Defendant had ample opportunity yet failed to object to a punitive damages charge. There was certainly sufficient evidence presented to find that such negligent misrepresentations (through statements or omissions constituting ratification) were made in a recklessly indifferent manner and outrageous in nature.

Collectively, each Plaintiff may respectfully point to the fact that Waterford's conduct caused their foreseeable reliance upon the essential terms of employment (or, in the case of Rosato t/a ECM, independent contractor engagement). Once relying on same, the Plaintiffs gave up jobs or opportunities, possibilities of advancement and, as Waterford admitted, experienced "disruption" to their lives. Each believed that they would work under Thomas Pippett, Sr. on the Adriaen's Landing Project until completion (or in the case of ECM, "substantial completion") of the project estimated to go 3-4 years or more. The personal and professional damages suffered

by the Plaintiffs were placed before the jury through their testimony, and supported by Mr. Pippett (and to some degree, Waterford's own witnesses, including Robert Saint). The fact that no one at Waterford interviewed, went over terms of employment, investigated the work each was doing on the project, but yet "pulled the plug" for "lack of work" (a defense obviously rejected by the jury), supports Waterford's reckless indifference and outrageousness. The record contained substantial evidence to support the jury's conclusion that Waterford's reasons for singling out the four Plaintiffs was based on a cold and callous decision-making, done on the spur of the moment and without regard to the consequences to the Plaintiffs' professional lives. None of the Plaintiffs, as a result of Waterford's negligent misrepresentations, have ever returned to the titles and responsibilities they previously enjoyed before they left the Philadelphia/New Jersey areas to relocate to Connecticut.[1]

In addition, substantial evidence was presented at trial to permit the jury to believe that:

(1)   Thomas Pippett, Jr. was terminated simply because he was the son of Pippett, Sr., because it would prove too embarrassing and awkward;

(2)   James Rosato was "too efficient" and "too knowledgeable" concerning the excess fees being charged by incompetent or unnecessary padding of bills and personnel;

(3)   Joseph McDonald, according to CFO Angel, was NEVER needed as a Project Controller and, to the extent he could, was deprived of phones, computers and the

---

[1] Thomas Pippett, Jr. had been a Project Manager for Westfalia making over $100,000 per year and has had to put on his carpenter tools again (something Bob Saint openly admitted he would not want to happen to him). James Rosato has been unable to secure any major project as an electrical project manager/coordinator; Joseph McDonald, who was unhappily unemployed for long stretches after his termination, could only secure a job as a senior project accountant rather than his prior positions as a controller. Darlene Jennings, unable to secure a job as an HR/Compliance Officer, has undertaken a yet unsuccessful consulting business and works for minimal wages for the Afro-American Chamber of Commerce.

-3-

accounting was removed from Hartford (never experienced on any project he had ever worked on) to Waterford, making him a glorified clerk, despite the fact that he had put together the preliminary budget for the then projected duration of the project (i.e., December 2003); and,

(4)  Darlene Jennings was "kept" an extra month being reassured on the night the other three Plaintiffs were terminated that her position was secure. Yet, Waterford's witnesses insisted that it never had needed a compliance officer, it was too early for HR and they had no idea what she was doing to satisfy the Development Agreement's requirements for job incentives for local Hartford residences and minority hiring.

In short, Waterford demonstrated a clear indifference and recklessness to the Plaintiffs. Consequently, Waterford's conduct was outrageous within the scope of the Connecticut standard for the award of punitive damages.

## B. Fee Agreements with Plaintiffs

Attached to this Brief  (Exhibit "A") are the fee agreements entered into by the Plaintiffs to pay their attorneys one-third (1/3) of any recovery by way of settlement or verdict. The case was taken on a contingency basis. Also attached is an affidavit of Connecticut counsel opining that the one-third (1/3) contingent fee agreements are fair and reasonable (Exhibit "B").

The risks inherent in a contingent fee representation, spanning years and requiring out-of-state participation pretrial and during trial, were absorbed by the Plaintiffs.  The Offer of Judgment filed in this Court by the Defendant (offering an aggregate of $150,000) demonstrates Waterford's unrealistic assessment of its liability to Plaintiffs.

In most states, juries award both compensatory and punitive damages. The fees earned by the attorneys working on a contingent fee basis deduct from the total verdict their agreed-upon percentage.  The compensatory component of the jury verdict totals $2,659,000.  The addition of

punitive damages should, it is respectfully submitted, be in such additional amount as to permit Plaintiffs to net their compensatory damages and not have to pay their attorneys' fees and costs out their gross recoveries. This would penalize Plaintiffs and defeat the purpose of punitive damages under Connecticut law. For the reasons stated below, it is respectfully prayed that punitive damages be awarded in the amount of $1,329,500 or a combined final judgment in the amount of $3,988,500.

### C. Plaintiffs' Costs of Litigation

In addition to attorney's fees, Plaintiffs are entitled to have punitive damages calculated to include expenses of litigation, less taxable costs. Berry v. Loiseau, 614 A.2d 414, 437 (Conn. 1992). Plaintiffs have attached hereto a listing of their expenses of litigation, totaling $28,269.17.[2] (Exhibit "C")

### II. ARGUMENT

**Connecticut Law Approves of the Payment of Punitive Damages Based on a Contingent Fee Agreement and A One-Third Contingency Agreement Has Been Deemed Reasonable.**

Under Connecticut law, punitive damages are to be determined by the Court and the measure of punitive damages in Connecticut is the Plaintiff's attorneys fees and costs. Plaintiffs are commonly represented by attorneys on the basis of contingent fee agreements, and Connecticut courts have recognized the reasonableness of contingent fee agreements providing for attorney's fees payable at the rate of one-third of the plaintiffs' recovery.

In Berry v. Loiseau, 614 A.2d 414 (Conn. 1992), the Connecticut Supreme Court reviewed the law applicable to the award of punitive damages based upon contingency fee

---

[2] Some of the enumerated costs are likely to be determined to be "taxable costs" payable by the losing party (in this case, Waterford Development, LLC), and thus may be excluded by the Court for purposes of arriving at the punitive damages amount.

-5-

agreements.  In pertinent part, the <u>Berry</u> Court stated:

> "This court has previously upheld punitive damages awards computed on the basis of a
> plaintiff's contingency fee agreement with his attorney. See <u>Holbrook v. Casazza</u>, 204
> Conn. 336, 359-61, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 699, 98
> L.Ed.2d 651 (1988); <u>Markey v. Santangelo</u>, 195 Conn. 76, 80, 485 A.2d 1305 (1985);
> <u>Gionfriddo v. Avis Rent A Car System, Inc.</u>, 192 Conn. 280, 293-96, 472 A.2d 306
> (1984). We note, moreover, that the admission of a written fee agreement as evidence of
> the plaintiff's litigation expenses is in accord with Connecticut practice. See 6
> Connecticut Practice, J. Fitzgerald & R. Yules, Connecticut Trial Practice (1987) § 5.19,
> p. 197. Thus, on remand, the trial court may properly consider the terms of the plaintiff's
> fee agreement in assessing the amount of punitive damages to be awarded." 614 A.2d at
> 437.

The award of a one-third (1/3) amount consistent with the attorney's contingent fee

agreement has also been upheld as reasonable and appropriate in the award of punitive damages.

As the Connecticut Supreme Court stated in <u>Markey v. Santangelo</u>, 485 A.2d 1305 (Conn.

1985):

> "Punitive damages consist of a reasonable expense properly incurred in the
> litigation; <u>Shupack v. Gordon</u>, 79 Conn. 298, 303, 64 A. 740 (1906) . . . The
> plaintiff testified that he had agreed to an arrangement whereby in the event of a
> recovery **his attorney would receive a fee of one third of the amount awarded.**
> **The defendant argues that absent evidence of the reasonableness of such fees**
> **they may not be awarded. We do not agree**. We have long held that in a claim
> for damages " 'proof of the expenses paid or incurred affords some evidence of
> the value of the services, and if unreasonableness in amount does not appear from
> other evidence or through application of the trier's general knowledge of the
> subject-matter, its reasonableness will be presumed.' <u>Carangelo v. Nutmeg Farm,</u>
> <u>Inc.</u>, 115 Conn. 457, 462, 162 A. 4 [1932]." <u>Flynn v. First National Bank & Trust</u>
> <u>Co.</u>, 131 Conn. 430, 436, 40 A.2d 770 (1944). Whether the incurred fees are owed
> to a physician or to an attorney the same rule applies. <u>Storm Associates, Inc. v.</u>
> <u>Baumgold</u>, 186 Conn. 237, 246, 440 A.2d 306 (1982). Nor do we see any reason
> for applying a different rule, in the case of an attorney, merely because the
> incurred obligation is contingent upon the successful outcome of the case." 485
> A.2d at 1308 (emphasis added).

In <u>Lord v. Mansfield</u>, 717 A.2d 267 (Conn. App. 1998), the court noted that " we

conclude that punitive damages are designed to compensate the injured party **<u>fully</u>**." 717 A.2d at

271 (emphasis added).  The <u>Lord</u> court quoted approvingly from the Connecticut Supreme

Court's <u>Berry</u> decision, noting:

> "Our Supreme Court, however, has observed: "In <u>Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Co.</u>, [193 Conn. 208, 477 A.2d 988 (1984)] ... [w]e affirmed the continuing viability of a long line of cases holding that common law punitive damages serve primarily to compensate the plaintiff for his injuries and, thus, are properly limited to the plaintiff's litigation expenses less taxable costs.... We remain convinced that a rule limiting punitive damages awards to the expenses of litigation less taxable costs **'fulfills the salutary purpose of fully compensating a victim for the harm inflicted on him** while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury.' [*Id.*, at 238, 477 A.2d 988]." (Citations omitted.) <u>Berry v. Loiseau</u>, *supra*, 223 Conn. at 827, 614 A.2d 414.  Punitive damages in Connecticut are not designed "to punish the defendant for his offense **but rather to compensate the plaintiff for his injuries**." <u>Miller v. Drouin</u>, 183 Conn. 189, 190, 438 A.2d 863 (1981); *see also* <u>Virgo v. Lyons</u>, 209 Conn. 497, 503-504, 551 A.2d 1243 (1988); <u>Tedesco v. Maryland Casualty Co.</u>, 127 Conn. 533, 538, 18 A.2d 357 (1941); <u>Doroszka v. Lavine</u>, 111 Conn. 575, 578, 150 A. 692 (1930)."  717 A.2d at 271 (emphasis added).

Plaintiffs each have contingent fee agreements providing that their legal counsel be paid one-third (1/3) of the net total proceeds of any settlement or award.  The punitive damages award which will be determined by the Court is calculated or determined based upon Plaintiffs' expenses of litigation (consisting of attorney's fees and costs), **but is not itself a determination of the amount of attorney's fees payable by Plaintiffs.**  Consequently, the amount of punitive damages awarded to Plaintiffs raises the amount of total net proceeds awarded to each Plaintiff. In order for Plaintiffs to be **compensated fully** for the harm they suffered at the hands of Waterford, it is submitted that punitive damages ought to be calculated in an amount that will permit the Plaintiffs each to recover the verdict amounts awarded by the jury, without deduction for attorney's fees payable under their respective one-third (1/3) contingent fee agreements.

On the basis of the foregoing, it is respectfully prayed that the Court award punitive damages in an amount that, when aggregated to the compensatory award, will permit Plaintiffs

to net their awarded compensatory damages.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court award punitive damages to the Plaintiffs in the amount of **$1,329,500**, to be allocated in the proportionate amounts of the compensatory verdicts each was awarded:

| | | |
|---|---|---|
| **Thomas Pippett, Jr.** | **$412,012.50** | (30.99%) |
| **James Rosato t/a ECM** | **$354,577.65** | (26.67%) |
| **Joseph McDonald** | **$366,942.00** | (27.60%) |
| **Darlene Jennings** | **$195,968.30** | (14.74%) |
| TOTAL | **$1,329,500.00** | (100.00%) |

Further, Plaintiffs request that the punitive damages award also include their other out-of-pocket expenses of litigation, less taxable costs, in the amount of **$28,269.17.**

Respectfully submitted,

POMERANTZ & SCHEFFER                   PERLBERGER LAW ASSOCIATES, P.C.


_____       _____
Gerald Jay Pomerantz, Esquire          Norman Perlberger, Esquire
21 South 12th Street, Suite 700        326 W. Lancaster Avenue, Suite 210
Philadelphia, PA 19107-3603            Ardmore, PA 19003
Phone: (215) 569-8866                  Phone: (610) 645-0900
Fax: (215) 568-6511                    Fax: (610) 645-9240


Dated:_____         (Attorneys for Plaintiffs)

## CERTIFICATION

I hereby certify that I have caused to be served a copy of the foregoing Plaintiffs' Brief in

Support of Punitive Damages, together with Exhibits by first-class mail this 24th day of

September, 2004, to the counsel of record listed below as follows:


Andrew Houlding, Esquire
Bridget Ciarlo, Esquire
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103-3101

Barbara Collins, Esquire
44 Capitol Avenue, Suite 402
Hartford, CT 06106


_____
Michael W. Jones, Esquire
Pomerantz & Scheffer
21 South 12th Street, Suite 700
Philadelphia, PA 19107