UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
OCT 8  2 49 PM '04

| | |
|---|---|
| THOMAS P. PIPPETT, JR., <br> JOSEPH T. McDONALD, and <br> JAMES J. ROSATO, IND. <br> t/a ECM ELECTRICAL <br> CONSTRUCTION, <br>     Plaintiffs <br> vs. <br><br> WATERFORD DEVELOPMENT, LLC, <br>     Defendant and Third Party Plaintiff, <br><br> vs. <br><br> THOMAS PIPPETT, SR., <br>     Third Party Defendant | CIVIL CASE NO. <br> 3:01cv1716(MRK) |
| DARLENE JENNINGS, <br>     Plaintiff <br> vs. <br><br> WATERFORD DEVELOPMENT, LLC, <br>     Defendant | CIVIL CASE NO. <br> 3:02cv1937(MRK) <br><br><br> OCTOBER 8, 2004 |

### DEFENDANT'S RESPONSE TO PLAINTIFFS' BRIEF IN SUPPORT OF PUNITIVE DAMAGES

#### INTRODUCTION

Because the plaintiffs claim that the award of attorneys' fees as punitive damages should be calculated as a percentage of the compensatory award, the defendant is in the unusual position of attacking aspects of the compensatory award now as well as later in a F.R.C.P. Rule 59 motion. While the defendant objects to the awarding of punitive damages, the defendant does agree that any such award should generally be calculated in accordance with the plaintiffs' contingency fee agreement. Schoonmaker v. Lawrence Brunoli, Inc., 265 Conn. 210, 266-73, 828 A.2d 64 (2003). The question now is: what is the base on which the attorneys' fee should

be calculated? The Court clearly charged that punitive damages were tort damages. Therefore, the non-tort verdict totaling $1,334,000 must be entirely excluded in calculating any contingency fee. That leaves the tort verdict of $1,325,000. The Court should further consider the following:

- The tort verdict should be entirely excluded, leaving a zero base, because the only tort count surviving in the pleadings when the case went to the jury was negligent misrepresentation. Negligent conduct and reckless conduct are entirely different causes of action and, in this case, involve different periods of time. (Issues 1 and 2)

- The tort verdict should also be entirely excluded because there is insufficient evidence on which to base a claim of reckless conduct. (Issue 3)

- In any event, a tort verdict of $1,325,000 is grossly excessive. Since only economic reliance damages were recoverable under the court's charge, the highest permissible tort verdict was $232,000. (Issue 4)

- Even this $232,000 is not a proper base because it largely duplicates the non-tort damages and the Court clearly charged the jury that it could not award a double recovery. The only part of the tort verdict that does not constitute a double recovery amounts to $21,500. (Issue 5)

- No fee can be calculated at this time because the tort and non-tort verdicts are fundamentally inconsistent, the former requiring a finding that the employment contract was misrepresented to be for the duration of the project when in fact it was at will employment, the latter requiring a finding that the employment contract was for the duration of the project. For that reason it is impossible to determine whether the proper verdict is in contract or tort. (Issue 6)

2

- Finally, a recent case appears to hold the plaintiffs are not entitled to fees because they produced no evidence during trial. Even if the evidence is accepted now, the fee agreement does not say what the plaintiffs say it says. (Issue 7)

The plaintiffs on page 2 of their brief have made two procedural observations.

The first observation is that the defendant did not file a Rule 50 motion. Since the defendant is not, in response to the plaintiffs' present motion, claiming insufficiency of evidence for some compensatory damages on any of the counts submitted to the jury, it is not clear that Rule 50 has any bearing on this proceeding. The defendant can find no case in which the jury finds punitive liability but the Court finds punitive damages after the submission of further evidence in a post-verdict proceeding where the defendant has a duty to attack the punitive claim in a Rule 50 motion before the jury. Even if a Rule 50 motion should have been filed, it arguably applies only to issues 3 and 7(a), because 1 and 2 have to do with the pleadings and 4, 5, 6, and 7(b) do not claim judgment for the defendant on punitive damages.

In any event, if the Court finds there is no basis in the pleadings or evidence for the award of punitive damages, the failure to file a Rule 50 motion does not stand in the way of the Court's granting a new trial. See <u>Doctor's Associates, Inc. v. Weible</u>, 92 F.3d 108, 113-14 (2d Cir. 1996) ("we will not woodenly apply [Rule 50] to obtain an unwarranted triumph of form over substance"); <u>Russo v. State of New York</u>, 672 F.2d 1014, 1021-22 (2d Cir. 1982) (even in absence of a motion for directed verdict it was proper to order a new trial where the plaintiff failed to prove an essential element of his case); <u>Sojak v. Hudson Waterways Corp.</u>, 590 F.2d 53, 54-55 (2d Cir. 1978) ("Plaintiff failed to move for a directed verdict pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Although he did not move to set the verdict aside, Rule 50(b) allows a judgment n.o.v. to be granted only if the moving party requested a directed verdict

3

before the submission of the case to the jury. However, we are not powerless to grant relief. Where a jury's verdict is wholly without legal support, we will order a new trial in order to prevent a manifest injustice"); Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d 814, 817 (2d Cir. 1970) ("[H]ad counsel moved for a directed verdict and then moved for a judgment n.o.v., he would be entitled to an entry of judgment in his favor. This relief is denied him, but we consider it fair to remand for a new trial on the merits").

The plaintiffs' second observation pertains to Rule 51 and will be addressed below where appropriate. However, this observation is not relevant to issues 3, 4, 5 and 7.

1. **The Court Erred in Instructing on Punitive Damages; Connecticut Law Requires that Willful, Wanton or Reckless Conduct be Specifically Alleged.**

The plaintiffs' Second Amended Complaint fails to plead any allegation for punitive damages under tort. The count for Fraudulent Misrepresentation, which included punitive damages, had been voluntarily withdrawn by plaintiffs, and all other attempts to reintroduce claims for punitive damages, either by attaching it to the Breach of Contract count, or by resurrecting the withdrawn Fraudulent Misrepresentation count, or by adding a Wrongful Discharge count, were overruled.[1] Absent an allegation for punitive damages in this case there was no notice to the defendants.

The Charge, however, states that:

> Mere negligence does not warrant an award of punitive damages.
> However, punitive damages may be awarded to any one or more of the Plaintiffs

---

[1] Plaintiffs' Second Amended Complaint asserted only one cause of action upon which a punitive damages award was legally cognizable. That cause of action was for "fraudulent misrepresentation" and it was voluntarily withdrawn by plaintiffs on April 1, 2002.
The remaining counts of the Second Amended Complaint were Breach of Contract; Promissory Estoppel; Breach of the Covenant of Good Faith and Fair Dealing ("Breach of Covenant"); and Negligent Misrepresentation. None of these counts contained any allegations that could support a legally viable basis for punitive damages.

4

> in this case if you find that Plaintiff has proven both Negligent Misrepresentation and that Waterford engaged in malicious or outrageous conduct, that is, willful, wanton or reckless actions done with a bad motive or reckless indifference to the interests of others.

Written Jury Charge, p. 37.

While the defendant appears not to have objected to this charge,[2] allowing the jury to consider an issue not pleaded constitutes plain error requiring the verdict be set aside even if the issue is not raised before the verdict. 9 J. Moore, et al., MOORE'S FEDERAL PRACTICE § 51.42, pp. 51-52, 53, n.7 (3d ed. 2004) ("trial court's erroneous charge on passenger contributory negligence, in absence of evidence or pleading on issue, was sufficiently fundamental to warrant new trial despite lack of objection"), citing Pate v. Seaboard R.R., Inc., 819 F.2d 1074, 1080-83 (11th Cir. 1987); see Rodick v. City of Schenectady, 1 F.3d 1341, 1347-49 (2d Cir. 1993), discussed below in §6.

The Court incorporated punitive damages into the tort allegation of negligent misrepresentation. Jury charge, pp. 36-38. However, the pleadings fail to support this additional claim. There are no allegations in the Second Amended Complaint claiming willful, wanton or reckless conduct. As such, there was no basis upon which to proffer this issue to the jury. The Court's instruction was also inconsistent with its prior rulings denying any possible recovery of punitive damages.

Under Connecticut law, not only must allegations for punitive damages be clearly alleged, they must be alleged as a separate and distinct count from negligence. The failure to allege a claim for punitive damages as a separate and distinct cause of action precludes any such recovery. Kostiuk v. Queally, 159 Conn. 91, 267 A.2d 452 (1970). This

---

[2]/    As of today, the defendant has received only portions of the trial transcript.

premise has been consistently followed and applied by Connecticut courts. <u>Warner v. Leslie-Elliott Constructors, Inc.</u>, 194 Conn. 129, 138, 479 A.2d 231 (1984); <u>Advanced Financial Services, Inc. v. Associated Appraisal Services, Inc.</u>, 79 Conn.App. 22, 830 A.2d 240 (2003).

Federal courts in this District have followed these precepts. In <u>Williams v National Railroad Passenger Corporation</u>, 16 F.Supp.2d 178 (D.Conn. 1998) (Nevas, J.), the District Court, citing <u>Warner v. Leslie-Elliott Constructors, Inc.</u>, *supra,* 194 Conn. at 138, ruled that "[a] cause of action for recklessness is distinct from a claim for negligence and must be explicitly pleaded so that a defendant is on notice that such a claim is being raised." 16 F.Supp.2d at 182. The court dismissed the <u>Williams</u> plaintiff's count for recklessness for failure to support the claim with allegations demonstrating wanton or reckless behavior; the defective count included allegations of "ordinary negligence." <u>Id.</u> In dismissing the recklessness count, Judge Nevas also dismissed the plaintiff's claim for punitive damages. <u>Id.</u> at 182, note 3.

Similarly, in <u>Rodriguez v. Abbatiello</u>, 30 F.Supp.2d 274, 278 (D.Conn. 1998) (Eginton, J.), the court noted that:

> Because an assault and battery may be committed in three ways – first, if committed willfully or voluntarily, and therefore intentionally; second, done under circumstances showing a reckless regard of the consequences; third, committed negligently – a complaint which only puts a defendant on notice that the plaintiff is allegedly seeking damages for a garden-variety "assault and battery," would be insufficient for the grant of punitive damages.

<u>Id.</u> at 278, *citing* <u>Markey v. Santangelo</u>, 195 Conn. 76, 78, 485 A.2d 1305 (1985).

These cases require the conclusion that, in the absence of a viable count specifically alleging recklessness, the instruction on the recovery of punitive damages was in error, and that no punitive damages may be recovered.

**2.    The Recklessness/Punitive Damages Charge Erroneously Focused on the Termination of Plaintiffs' Employment.**

The Charge continues:

> In determining whether the conduct was wanton or willful, you must consider what occurred in light of all the facts involved. By wanton or willful, I mean that you must decide whether Waterford's actions *in terminating* any Plaintiff were motivated by ill will towards that Plaintiff, or for the purpose on the part of Waterford to do harm to that Plaintiff.

Jury Charge, p. 37 (emphasis added).

The punitive damages charge erroneously focused the jury's attention on the termination of plaintiffs' employment despite the fact that the misrepresentation count addresses the formation of the employment relationship.

By instructing the jury to consider whether "Waterford's actions in terminating any Plaintiff were motivated by ill will . . . ," the Court erroneously departed from the essential elements of the misrepresentation count. Craine v. Trinity College, 259 Conn. 625, 661, 791 A.2d 518 (2002). The law of damages for misrepresentation provides (as accurately summarized in the Charge) for recovery of economic losses incurred *in reliance on the misrepresentation*.

> The economic damages recoverable for a negligent misrepresentation are those necessary to compensate the Plaintiff for the monetary loss suffered as a result of the misrepresentation. These monetary losses may include all monetary losses suffered as a consequence of a Plaintiff's reliance upon the misrepresentation, including lost opportunities. Finally, the economic damages recoverable for a negligent misrepresentation do not include the benefit of that Plaintiff's contract with Waterford.

7

Charge, pp. 36-37. It is inconsistent with the misrepresentation count to award punitive damages derived from the defendant's conduct at the time of termination of employment.[3]

If the plaintiffs intended to state a cause of action for the termination, they could have pled either wrongful termination or intentional infliction of emotional distress. Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 697-98, 802 A.2d 731 (2002); Muniz v. Kravis, 59 Conn.App. 704, 754 A.2d 1207 (2000). In cases involving a claim for intentional infliction of emotional distress, the factfinder must find that the conduct of the defendant at the time of termination is "extreme and outrageous." Muniz at 708. This language parallels the language in the charge that the jury must determine whether the defendant's conduct at the termination was "malicious or outrageous." (Charge, p. 37). The plaintiffs did not allege either of these causes of action. As a result, there is no allegation in the Second Amended Complaint to support any damages for conduct occurring at the time of termination.

The erroneous charge on punitive damages "infected the jury's entire consideration of the evidence on damages," Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd., 930 F.2d 1021, 1027-28 (2d Cir.1991), and so the punitive damages filing cannot be the basis of any fee award.

---

[3]/   The plaintiffs' attacks on the manner of termination are properly – and exclusively – found in the Breach of Covenant count, and the Court had already ruled that punitive damages were *not* recoverable on that count.

8

3. **The Evidence Relating to Plaintiffs' Negligent Misrepresentation Claims is Insufficient to Impose a Punitive Damages Award.**

Even if the punitive damages claim was properly raised by the plaintiffs, they did not submit sufficient evidence to sustain a verdict. The plaintiffs' negligent misrepresentation claims arise from the statements concerning duration of employment made by Thomas Pippett, Sr. and relied upon by the plaintiffs to their detriment. While the evidence concerning these statements might support a compensatory damages award, there is insufficient evidence to justify the assessment of punitive damages against Waterford. Without evidence that the misrepresentations were made willfully, wantonly, maliciously or recklessly and were attributable to Waterford, there is no basis for punitive damages.

The plaintiffs' brief in support of punitive damages makes several references on pages 3 and 4 to alleged "reckless" and "outrageous" conduct by Waterford. However, <u>none</u> of the conduct relates to the Pippett Sr. misrepresentations. Indeed, all evidence cited by plaintiff of supposedly reckless conduct relates to incidents which occurred long after the alleged misrepresentations. At most, the evidence supports a finding that there was a miscommunication and/or misunderstanding between Waterford and Pippett Sr. concerning the extent to which he could make hiring commitments on Waterford's behalf to new employees such as the plaintiffs, if at all. The focus of the negligent misrepresentation claim must be upon the formation of the plaintiffs' employment relationships, not the termination.

Plaintiffs were required to show that defendant's alleged negligent misrepresentations rose to the level of recklessness. As previously noted, the purported misrepresentation of fact was that plaintiffs would be terminable only for cause during the duration of the Adriaen's Landing project, when in fact they were terminable at will. Apart from the inherent

9

inconsistency with a finding that plaintiffs were not terminable at will, it is also illogical to contend that defendant was reckless in representing to plaintiffs that they would be terminable only for cause: after all, plaintiffs succeeded in claiming that that representation was true.

Under Connecticut law, as a general rule, punitive damages are not recoverable against an employer for claims premised upon vicarious liability. Maisenbacker v. Society Concordia, 71 Conn. 369, 379-380, 92 A. 67 (1899). "[N]o recovery of exemplary damages can be had against a principal for the tort of an agent or servant, unless the defendant expressly authorized the act as it was performed, or approved it, or was grossly negligent in hiring the agent or servant." (Internal quotation marks omitted.) Id.; see also Restatement (Second), Torts § 909 (1977).

In connection with the formation of the employment relationship, it was Pippett Sr., who made whatever representations upon which the plaintiffs relied. The Second Amended Complaint contained no allegations, and the plaintiffs offered no evidence, that Waterford expressly authorized its agent, Pippett Sr., to misrepresent recklessly or intentionally to the plaintiffs that they would be employed for the duration of the Adriaen's Landing project and would be terminated only for cause. Similarly, there were no allegations, and no evidence, that Waterford was grossly negligent in hiring its agent, Pippett Sr. Consequently, punitive damages are not recoverable against Waterford for the plaintiff's claims of negligent misrepresentation, which necessarily were premised upon vicarious liability.

4. **There is Insufficient Evidence of Plaintiffs' Reliance Damages to Support the Tort Verdict of $1,325,000; Therefore Plaintiffs' Fee Application is Unreasonable.**

If the Court determines that it must assess punitive damages against Waterford, the amount sought by the plaintiffs is grossly excessive. The amount requested is

10

$1,329,500, more than 100 percent of the tort verdict, which provides the *sole* basis for any punitive damages award. It is apparent that the plaintiffs added the gross amounts of the contract-based and tort-based verdicts ($1,334,000 plus $1,325,000 respectively) and divided by two to reach $1,329,500. This calculation is obviously incorrect since it incorporates the contract-based verdict for which punitive damages are not recoverable.

Unlike the three counts based upon the existence of a contract, damages under the negligent misrepresentation count are restricted to "reliance" damages suffered by the plaintiffs. Jury Charge, pp. 36-37. The evidentiary basis for damages recoverable under the tort count is substantially less than the amount awarded by the jury verdict.

> Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. Thus, the court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount.

CAS Const. Co., Inc. v. Town of East Hartford, 82 Conn. App. 543, 557, 845 A.2d 466 (2004) (internal citations and quotations omitted).

The court charged the jury only on economic damages. Jury Charge, pp. 36-37. It is noteworthy that plaintiffs' brief does not recite any economic evidentiary support for the sizeable negligent misrepresentation verdict. Other than general testimony about the possible effects of their terminations upon their careers, plaintiffs offered no evidence upon which the jury could have made an objectively reasonable calculation of any such damages. Plaintiffs did not offer any expert witness testimony to support the proposition that they sustained harm to their future careers. Nor did they even attempt to make any calculations as to any financial ramifications resulting from their reliance. Therefore, evidence of plaintiffs' reliance damages is entirely speculative other than as discussed

11

below and the jury's tort verdict must be reduced dramatically for the purpose of calculating the fee award.

Taken most favorably to plaintiffs, the evidence of possible reliance damages amounts to the following:

### a.    Rosato's Reliance Damages.

Plaintiff Rosato/ECM offered no evidence of lost opportunity. Rosato testified that he and his company were not engaged in any work for which he was being compensated in May-June, 2000. He testified that he had some projects that he did not pursue because he took the Waterford position, but he provided no evidence of any specific missed opportunity, and he provided no evidence of any particular reliance loss.

He testified that he incurred minor unreimbursed expenses in connection with his stay in Hartford (e.g., minor utility bills for his apartment), but acknowledged that Waterford had reimbursed all but a few hundred dollars in expenses. He testified that he acquired a Jeep vehicle, for an undisclosed amount, in connection with the Waterford job, but admitted that he kept the vehicle after his services were terminated. The jury could not reasonably find that his reliance damages were more than $1,000.

The jury awarded Rosato/ECM $325,000 in tort damages. That award bears no relation whatsoever to the evidence, so that even if the tort claim were not otherwise dismissed, it should be reduced to the amount that could objectively be ascertained.

### b.    Pippett Jr.'s Reliance Damages.

Pippett Jr. offered evidence that he resigned from his position with Westfalia Technologies, at $110,000 annually, in order to take the Waterford job in June, 2000. In the period up to the time of trial he reported earnings of $290,036. He claimed no unreimbursed

12

expenses and he offered no evidence that his compensation at Westfalia would have increased. Thus his reliance damages would be four years of Westfalia earnings – roughly $440,000 – less his mitigation. No reasonable jury could find that those damages were in excess of $150,000. Yet, the jury awarded him $450,000.

### c.   McDonald's Reliance Damages.

McDonald offered some evidence that he might have stayed in his $65,000 position as a project accountant on the Loew's Project (albeit that the Project was close to completion). He offered no evidence to show that his salary would have increased had he stayed in Philadelphia. Even if the jury were to conclude that his Project Accountant position with Loew's would have survived for an additional four years (a stretch), his earnings would not have exceeded $260,000 in the period leading up to trial based upon the evidence. Since he admitted earning $200,970 during the same period, his reliance damages would have been roughly $60,000. Despite the foregoing, the jury awarded him $325,000.

### d.   Jennings Reliance Damages.

Jennings offered evidence that she resigned from a $30,000 position at First USA Bank, so she would have earned roughly $120,000 over the same period. She testified that the Bank would have reimbursed her for college courses that she took, in the amount of $16,000. She also testified that she spent about $4,500 furnishing an apartment in Hartford (although she kept the furniture). At best, her reliance damages amounted to $140,500 and she reported earnings (including unemployment compensation) of $119,241. Her reliance damages were thus approximately $21,000; yet the jury awarded her $225,000.

Adding the maximum amount of reliance damages with evidentiary support for all four plaintiffs, the negligent misrepresentation verdict claims could not have exceeded $232,000. The sums awarded plaintiffs on their tort claim are grossly excessive and contrary to the evidence.

In building their punitive damages request to $1,329,500, the plaintiffs improperly took the total verdict amount and divided by one half rather than the customary one third. This is contrary to the calculations the Supreme Court endorsed in <u>Schoonmaker</u>. Under the terms of the plaintiffs' one third contingency fee agreements,[4] the maximum fee award this court should consider based upon a $232,000 negligent misrepresentation claim is $77,333.

**5.      The Tort Verdict Almost Entirely Duplicates the Non-Tort Verdict.**

Even an award of $232,000 for negligent misrepresentation is excessive since the reliance damages discussed in the previous section are largely duplicative of the damages awarded the plaintiffs on their contract claims. The contract damages award to restore the plaintiffs to their position if the contract had been performed was predicated upon the plaintiffs each working for Waterford throughout the proposed four-year project. Obviously, if the plaintiffs have been awarded contract damages reflecting their full-time employment during the period from their terminations to the date of trial, they cannot also recover for their lost earnings at their previous jobs during the same time period. Awarding damages for post-termination income lost as potential Waterford employees and additional damages for income lost at their former jobs clearly constitutes a double recovery. Despite the Court's acknowledgment that the jury could not award overlapping damages on the contract and tort claims (tr. 9/3/04, pp. 4-6, 8), the jury obviously did so due to mistake, confusion or prejudice.

---

[4]     Plaintiffs' counsel has provided no time records, hourly bill computations or other material in support of its punitive damages claim to assist the court.

14

If the lost wages from former employment are deducted from the $232,000 negligent misrepresentation award, the only remaining reliance damages on the tort claim are as follows:

Rosato-      $1,000

Pippett Jr.- $0

McDonald-    $0

Jennings-    $20,500

TOTAL-       $21,500

To avoid awarding a double recovery consistent with the concerns expressed by the Court and even expressed by the plaintiffs' counsel when he contemplated withdrawing his contract claims during the trial (tr. 9/3/04, pp. 3-4), the tort award should be modified to eliminate those damages which are duplicative of those awarded under the contract claims. Accordingly, the punitive damages award calculations should be based on a negligent misrepresentation award which accurately reflects the plaintiffs' combined reliance damages in the amount of $21,500. This would yield a maximum fee award of $7,167.

6.  **No Punitive Damages May Be Awarded Now Since the Jury Verdict is Fundamentally Inconsistent.**

The negligent misrepresentation verdict is fundamentally inconsistent with the verdict on the contract-based claims of the remaining counts. Effectively, the jury found that plaintiffs were simultaneously terminable at will and terminable only for cause. This constitutes error requiring a new trial even if the issue is not raised before the verdict. Rodick v. City of Schenectady, 1 F.3d 1341, 1347-48 (2d Cir. 1993); Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 577, 479 A.2d 781 (1984).

15

In Rodick, the Second Circuit held that the damages calculation by the jury could not stand because it erroneously allocated under the principle of respondent superior a greater amount of liability to the city than the individual defendants; and it also allocated different amounts of liability to the individual defendants who were jointly and severally liable. Id. at 1347-48. The Court noted that the instructions as far as they went were indeed accurate and unobjectionable, but the erroneous damages calculation revealed a fundamental error. F.R.C.P. Rule 51, amended in 2003, includes the express adoption of the plain-error standard of review, which is less exacting than fundamental error. U.S. v. Parcel of Property, 337 F.3d 225, 233 (2d Cir. 2003).

Under the negligence theory, plaintiffs claimed that defendant *falsely* represented that plaintiffs would be employed for the duration of the Project, terminable only for cause. As stated in the Jury Charge, "Each Plaintiff must prove that Waterford made misrepresentations – or false statements – to that Plaintiff regarding the duration of that Plaintiff's contract on the Adriaen's Landing project or that that Plaintiff would not be terminated except for cause." Jury Charge, p. 31. Since the predicate for the negligent misrepresentation count is that this representation was false, the foundation for the tort claim is that, in truth, plaintiffs were employed *at will*. Under this theory, then, defendant could not be liable to plaintiffs for *terminating* their employment, since at-will employees may be terminated at any time and for any reason. Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 697-98, 802 A.2d 731 (2002); Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 226, 837 A.2d 759 (2004). Plaintiffs simultaneously pursued alternative, contract-based theories – breach of contract, promissory estoppel, and breach of the covenant of good faith and fair dealing.

16

Prior to the verdict, the tort and contract theories could stand as alternative grounds for potential recovery by plaintiffs. But when the jury awarded the plaintiffs the sum of $1,325,000 on the contract theories, it necessarily determined that plaintiffs could only be terminated for cause and that defendant breached those agreements in terminating their employment. As a matter of law and fact, the jury could not have simultaneously also awarded damages in the sum of $1,334,000 to the plaintiffs on an at-will employment theory.

By finding that plaintiffs had contractual and/or quasi-contractual agreements with defendant terminable only for cause, the jury must have found that they were *not* employed at will. "*In the absence of an employment contract*, an employer and employee will be deemed to have an at-will employment relationship." Carnemolla v. Walsh, 75 Conn.App. 319, 815 A.2d 1251, cert denied, 263 Conn. 913, 821 A.2d 768 (2003) (emphasis supplied); *accord* Cweklinsky v. Mobil Chemical Co., *supra,* 267 Conn. at 226. Therefore, the jury necessarily decided that the representations that were made to each plaintiff regarding the duration of employment on the project or that that plaintiff would not be terminated except for cause, *see* Charge, p. 31, were not false. Thus, defendant cannot have committed the tort of negligent misrepresentation, since the provision of "false information" is an essential element of that tort.

The jury's tort and contract damages calculations present similar inconsistencies to those in Marron and Sipe Bldg. and Contracting Corp. v. Flor, 22 Conn.App. 689, 580 A.2d 508 (1990), where the Appellate Court concluded that the verdict was properly overturned on one count that was logically negated by the jury's finding on another count. See also Meaney v. Connecticut Hospital Assn., Inc., 250 Conn. 504, 517-18, 735 A.2d 813 (1999) (express contract precludes implied-in-law contract); DaCruz v. State Farm Fire and Casualty Company, 268 Conn. 675, 846 A.2d 849 (2004) (conduct cannot be both intentional and negligent).

17

Here, the jury's determination on damages is legally inconsistent, and the verdict is in error.

7.  **Plaintiffs Failed to Offer Evidence at Trial in Support of their Claim for Litigation Expenses Including Attorney Fees; In any Event the Evidence now Offered does not Support the Plaintiffs' Calculations.**

The Court invited plaintiffs' counsel to submit post-trial evidence in support of their claim for punitive damages. Plaintiffs have now submitted copies of contingent fee agreements with their counsel, and an affidavit from New Haven attorney Joseph Garrison declaring that contingent fee agreements "requiring payment of one third of the gross or net recovery" are "reasonable" in his opinion.

**a.**

Whether the plaintiff must submit punitive damages evidence during the trial was addressed but not resolved in Wolf v. Yamin, 295 F.3d 303, 311 (2d Cir. 2002), holding that Connecticut law on the proper evidentiary basis for punitive damages appears ambiguous. However, in Smith v. Snyder, 267 Conn. 456, 839 A.2d 589 (2004), the Court earlier this year held:

> [W]hen a court is presented with a claim for attorney's fees, the proponent must present to the court at the time of trial or, in the case of a default judgment, at the hearing in damages, a statement of the fees requested and a description of services rendered. Such a rule leaves no doubt about the burden on the party claiming attorney's fees and affords the opposing party an opportunity to challenge the amount requested at the appropriate time.

267 Conn. at 479. Accordingly, plaintiffs' fee request should be denied.

**b.**

Even if the attorneys' fee post-trial evidence is permissible, the plaintiffs' attorneys have calculated their 1/3 fee by adding 50% to the verdict and using the

resulting number for calculating the 1/3 fee. That is not what the fee agreement says. It says: "Our firm will be entitled to 1/3 of the net total proceeds <u>from</u> settlement or <u>verdict</u> . . . . (emphasis added)," not 1/3 of [verdict plus 50%]. The attorneys' fee award should be no more than 1/3 of whatever portion of the tort compensatory verdict, if any, survives.

## CONCLUSION

No punitive damages should be assessed. In the alternative, attorneys' fees should be calculated at no more than either one-third of $232,000 or one-third of $21,500.

DEFENDANT

By_____
Wesley W. Horton, Fed. Bar. No. CT05615
Robert M. Shields, Jr., Fed. Bar No. CT06685
Kimberly A. Knox, Fed. Bar No. CT01302
HORTON, SHIELDS & KNOX, P.C.
90 Gillett Street
Hartford, CT 06105
(860) 522-8338/FAX (860) 728-0401

_____
Andrew L. Houlding, Fed. Bar No. CT01217
ROME McGUIGAN, P.C.
One State Street
Hartford, CT 06103
(860) 549-1000/FAX (860)724-3921

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was faxed and mailed, postage prepaid, first class on October 8, 2004 to the following:

Gerald Jay Pomeranz, Esq.
Mark Scheffer, Esq.
**Pomerantz, Scheffer & Associates**
Stephen Girard Building, 7th Floor
21 South 12th Street
Philadelphia, PA 19107-3603

Norman Perlberger, Esq.
326 W. Lancaster Avenue, Suite 210
Ardmore, PA  19003
(610) 645-0900
Fax (610) 645-9240

Barbara Collins, Esq.
44 Capitol Avenue
Hartford, CT  06106
(860) 2976502
Fax (860) 246-3727

_____
WESLEY W. HORTON